IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CHARLES JOHN SHIRLEY, JR.,      )
     Plaintiff,               )       Civil Case No. 7:19-cv-00535
v.                          )
                           )       By: Elizabeth K. Dillon
JOHN A. WOODSON, *et al.*,      )         United States District Judge
     Defendants.         )

**MEMORANDUM OPINION**

Charles John Shirley, Jr., a Virginia inmate proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983.  His complaint names eleven defendants and lists ten separate "claims," although the claims are more accurately viewed as separate factual allegations in support of his legal claims.  Upon review of Shirley's complaint pursuant to 28 U.S.C. § 1915A(a), the court concludes that his claims fail to state a claim upon which relief can be granted and are subject to dismissal pursuant to 28 U.S.C. § 1915A(b)(1).

I.

Under 28 U.S.C. § 1915A(a), the court must conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  *See also* 28 U.S.C. § 1915(e)(2) (requiring court, in a case where plaintiff is proceeding *in forma pauperis*, to dismiss the case if it, for example, is frivolous or fails to state a claim on which relief may be granted).  Pleadings of self-represented litigants are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court.  *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

The events underlying Shirley's claims began on November 9, 2018, when Shirley, who

was working as a kitchen cook at Augusta Correctional Center ("ACC"), took some scraps from

the "staff side" of the kitchen area and placed them in a smaller pan to cook them.  He gave some

of the chicken to other offenders and had a few handfuls left in the pan, which he placed under a

table for offenders to have later.  When confronted, he admitted that he had taken these actions.

His kitchen job was terminated as a result, and he also was given and ultimately convicted of a

disciplinary charge of 111B, stealing state property.  (Compl. 5.)

In his complaint, Shirley acknowledges that he took the "scraps" and gave some to

offenders.  (Compl. 5 ("I did cook some scraps that were left over and did hand some out and did

have a few handfuls in a 4inch pan.").)  He denies, however, the testimony of the kitchen

supervisor, defendant Miller, that the chicken was worth $40, and he denies that he stole as much

as she alleged.  He thus contends that "the monetary claims are false and perjured."  (Compl. 9.)

He appealed his conviction, but his conviction was upheld.  He then wrote letters to defendant

Clarke, the Director of the Virginia Department of Corrections ("VDOC"), raising several

concerns related to his disciplinary proceedings.  (Compl. 9–11.)

Shirley's complaint also alleges that before the disciplinary hearing began, the hearing

officer, defendant Hostetter, made "racially motivated" comments.[1]  He filed an informal

complaint about her comments on December 4, 2018, which she answered on Friday, December

7.  The next day, Saturday, December 8, defendants Thompson and Parker conducted a

shakedown of Shirley's cell.  Shirley states that he "believe[s]" Hostetter asked or encouraged

Thompson and Parker to search his cell in retaliation for filing the complaint against her.

---

[1] The alleged comments, which Hostetter denied making in a complaint response attached to the complaint (*see* Dkt. No. 1-1, at 13), were that "African-American funerals lasted so long" and that "black women fake fainting to get attention."  (Compl. 7.)  Even if true that Hostetter made these comments, they do not give rise to an independent claim.

(Compl. 7.)

Liberally construed, Shirley's complaint could be interpreted as attempting to assert three claims.[2]  The first is a claim that his Fourteenth Amendment due process rights were violated in his disciplinary hearing and on appeal.  This claim is based in part on his allegation that the prison's operating procedure was not followed, including that certain forms were not handled properly pursuant to VDOC policy.  He also alleges that hearing officer Hostetter was biased against him, that defendant Miller offered perjured testimony concerning the value of the chicken strips and how much Shirley had taken, and that Hostetter failed to review camera footage that would have shown Shirley did not take the larger amount of chicken.

His second claim alleges a violation of his First Amendment rights based on his contention that his cell was searched ("shaken down") by defendants Parker and Thompson in retaliation for Shirley's filing an informal complaint against Hostetter.  Shirley's third claim alleges a violation of his Eighth Amendment rights because Hostetter and Parker both stared at him, and Hostetter did so in an attempt to intimidate him.[3]

For relief, he asks for $1.9 million from each defendant, the removal of his disciplinary conviction from his record, and that defendants be removed from their duties "due to their incompetence." (Compl. 12.)

II.

---

[2]  According to the documents attached to the complaint, one of Shirley's arguments on appeal was that other, unidentified inmates had committed the same offense but only received counseling or suspension as a penalty, while he was fired and received a level 100 disciplinary offense.  Shirley does not include that allegation in his complaint, however, and nothing in the complaint itself suggests that he is raising an equal protection claim.

[3]  It appears to the court that the alleged incidents of staring in an intimidating way by Hostetter and the staring by Parker were included in the complaint as support for Shirley's retaliation claim, not intended as a separate claim.  Nonetheless, construing the *pro se* complaint liberally, the court also addresses them as a separate claim.

## A.  Fourteenth Amendment Due Process Claim

"To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke* , 780 F.3d 245, 248 (4th Cir. 2015).  For an inmate to establish a constitutionally protected liberty interest requires a showing of an "atypical and significant" hardship or deprivation in relation to the ordinary incidents of prison life.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation that would give rise to a protected liberty interest).

Shirley alleges in his complaint that because his conviction was for a 100-series offense, it potentially affects his "good time" and thus implicates a liberty interest.  (Compl. 5.)  The documentation attached to his complaint, however, clearly states that the only penalties imposed as a result of his conviction were a 30-day loss of commissary privileges and a 30-day loss of telephone privileges.  (Dkt. No. 1-1, at 24.)  A loss of privileges while in prison generally does not implicate the Due Process Clause.  *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991).  In *Gaston*, the Fourth Circuit explained that "changes in conditions of confinement," including "the denial of privileges," are "matters which every prisoner can anticipate are contemplated by his original sentence to prison."  *Gaston*, 946 F.2d at 343.  Thus, Shirley has failed to state an actionable due process claim based on the penalties imposed for his disciplinary conviction.[4]

---

[4] It does not appear that Shirley is alleging a constitutional violation as a result of losing his prison job, but he has no due process rights as to the loss of his job because there is no protected liberty or property interest in prison employment.  *See O'Bar v. Pinion*, 953 F.2d 74, 82–84 (4th Cir. 1991); *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) ("Courts of appeals consistently have held that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest.").  Accordingly, the fact that he was fired from his prison job does not give rise to a due process violation, either.

Even if his conviction later adversely affected—or might affect in the future—Shirley's

rate of earning good conduct time,[5] as he appears to allege, it nonetheless fails to give rise to a

protected liberty interest.  A number of courts have held that Virginia prisoners have no liberty

interest in any particular classification or good conduct time earning rate, either derived from the

United States constitution, *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974), or as the result of

Virginia laws or policies, *Garner v. Clarke*, No. 7:18CV00560, 2019 WL 4455984, at *2–3

(W.D. Va. Sept. 17, 2019), *appeal docketed*, No. 19-7601 (October 23, 2019 4th Cir.).  *See Mills*

*v. Holmes*, 95 F. Supp. 3d 924, 931–34 (E.D. Va. 2015) (analyzing Virginia statutes and VDOC

regulations and concluding that "maintaining a particular . . . earning level" for good conduct "is

not a protected liberty interest in Virginia").  The Fourth Circuit has also so held, although in an

unpublished decision.  *West v. Angelone*, 165 F.3d 22, 1998 WL 746138, at *1 (4th Cir. 1998)

(unpublished table decision) ("Inmates have no protected liberty interest in remaining in or being

assigned to a particular good conduct allowance level . . . .").  Thus, no due process claim can be

brought as a result of Shirley's disciplinary conviction.[6]

It is also worth emphasizing that Shirley *admits* in his complaint that he engaged in the

---

[5] There are two "good time systems" used by VDOC.  *See Perry v. Clarke*, No. 7:12CV00245, 2012 WL
6738164, at *1 (W.D. Va. Dec. 28, 2012) (describing the two systems and how they operate).  In this opinion, the
court's use of the term good conduct time generally refers to whichever system applies to Shirley and allows him to
receive or earn time that ultimately reduces the amount of time he serves in custody.

[6] Assuming that Shirley's disciplinary conviction later affected his ability to earn good time credit as he
suggests, some courts have addressed such claims in the context of a habeas petition brought pursuant to 28 U.S.C.
§ 2254.  *See Mills*, 95 F. Supp. 3d at 931 (reasoning that a procedural due process challenge alleging that an earning
rate was reduced without notice or a hearing should be considered on the merits as a petition for writ of habeas
corpus and treating § 1983 claim as a § 2254 petition); *see also West*, 165 F.3d 22 (addressing challenge in context
of § 2254); *Garner*, 2019 WL 4455984, at *2–3 (addressing same claim brought in § 2254 petition).  Regardless of
whether his claim is properly addressed in the context of a § 2254 petition or as part of his § 1983 action, it still fails
for the same reason discussed in the text: a Virginia prisoner has no liberty interest, state-created or otherwise, in his
good time earning rate or his classification that affects that rate.  Thus, the court declines to construe his claim as a
§ 2254 petition.

conduct for which he was convicted (stealing), although he contends that the amount of chicken and its worth was not as much as was alleged. As the Supreme Court has explained, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators [in disciplinary proceedings] that have some basis in fact." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 456 (1985).

Lastly, the court notes that many of the alleged due process violations pointed out by Shirley were violations of the prison's policy governing disciplinary proceedings. But those violations do not state a constitutional claim. A state's failure to adhere to its own procedures and regulations is not a federal due process issue nor is it actionable under § 1983. *See Riccio v. Cty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990); *see also Weller v. Dep't of Social Servs.*, 901 F.2d 387, 392 (4th Cir. 1990) ("[I]t is well settled that violations of state law cannot provide the basis for a due process claim.").

For all of these reasons, Shirley fails to state a claim for relief under the Fourteenth Amendment.

## B.  First Amendment Retaliation Claim

The court likewise concludes that Shirley's complaint fails to allege sufficient facts to state a plausible claim of retaliation; thus, this claim will be dismissed without prejudice. To succeed on his § 1983 retaliation claim, Shirley must establish that (1) he engaged in protected First Amendment activity, (2) "the alleged retaliatory action adversely affected his protected speech," and (3) a but-for causal relationship existed between the protected activity and the retaliatory act. *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015).

Shirley has alleged the first element, because prisoners have a "First Amendment right to be free from retaliation for filing a grievance" under the prison's established grievance

procedure.  *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 541 (4th Cir. 2017).

For purposes of this opinion, the court will assume, without deciding, that a cell shakedown could satisfy the second element of a retaliation claim, which requires an action by defendant that "would likely deter a person of ordinary firmness from the exercise of First Amendment rights," *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005).  *See Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002) (concluding that it was an issue for the jury as to whether two harassing cell searches and confiscation of material "would deter a person of ordinary firmness" from exercising his First Amendment rights and collecting cases); *but see Ballance v. Angelone*, No. CIV.A. 7:01CV 00410, 2002 WL 32074716, at *7 (W.D. Va. May 2, 2002), *aff'd*, 46 F. App'x 223 (4th Cir. 2002) ("A cell shakedown and the alleged confiscation of material, whether or not it was done in response to filing of a lawsuit, is not sufficiently adverse to [the plaintiff] to constitute retaliation."); *Williams v. Stevenson*, No. 1:19-CV-863, 2020 WL 255674, at *5 (W.D. Mich. Jan. 17, 2020), (holding that a single cell search, without any seizure of property, was not a sufficiently adverse action to support a retaliation claim), *appeal docketed*, No. 20-1121 (6th Cir. Feb. 10, 2020); *Miller v. Coning*, No. CV 11-377-LPS-SRF, 2014 WL 808023, at *13 (D. Del. Feb. 28, 2014) ("[T]wo cell shakedowns over a nine-month period do not constitute adverse action sufficient to state a claim for retaliation."), *report and recommendation adopted*, No. 11-0377-LPS, 2014 WL 3896605 (D. Del. Aug. 7, 2014).

Shirley has not pled sufficient facts, however, to plausibly allege the third element of his retaliation claim.  To establish the third element, a plaintiff must show that the protected activity was the but-for cause of the adverse action alleged.  *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015); *Gregg-El v. Doe*, 746 F. App'x 274, 275 & n.2 (4th Cir.

Jan. 3, 2019) (citing to *Foster* in addressing the causation standard in the context of a

prisoner's retaliation claim).  An inmate experiencing an adverse action shortly after a

correctional officer learns that the prisoner engaged in a protected activity may create an

inference of causation, but, generally, mere temporal proximity is "simply too slender a reed on

which to rest a Section 1983 retaliatory [ ] claim." *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir.

1993).  Here, Shirley has shown that the shakedown conducted by Thompson and Parker

occurred days after he filed his complaint against Hostetter, but the totality of his allegations

fail to plausibly allege the "rigorous" but-for standard of causation.  *See Raub*, 785 F.3d at 885

("[O]ur causal requirement is rigorous." (internal quotations and citations omitted)).

In particular, Shirley has not alleged any facts to support a reasonable inference that

either Parker or Thompson took the alleged retaliatory action because of Shirley's exercise of a

constitutionally protected right, or that they would not have taken that action absent his filing

an informal complaint against Hostetter.  *See Adams*, 40 F.3d at 75.  Indeed, he has not even

alleged that Parker or Thompson *knew* that he had complained about Hostetter, so as to rely on

temporal proximity.[7]  Further, Shirley offers nothing other than his bald belief that they

searched his cell at Hostetter's direction to retaliate against Shirley.  His "belief," in turn,

appears to be based on the fact that both Hostetter and Parker "stared" at him on the same date

that the search was conducted.  (Compl. 7.)  These allegations are insufficient to state a

plausible claim of First Amendment retaliation.  *See Adams*, 40 F.3d at 74 (summarily

dismissing retaliation claim as insufficient because it consisted of merely conclusory

---

[7] Shirley alleges that he obtained the informal complaint form from Sgt. Parker, but he does not allege that
he told Parker the substance of his complaint or that he intended to complain about a particular person.  Nor does he
identify any reason why Parker or Thompson, both correctional sergeants, would follow the directions of Hostetter,
a disciplinary hearing officer, to conduct a cell shakedown.

allegations and no facts to show retaliatory motivation); *Cochran v. Morris*, 73 F.3d 1310,

1317 (4th Cir. 1996) (noting that courts must treat an inmate's claim of retaliation by prison

officials "with skepticism").

## C.  Eighth Amendment Claim

To the extent Shirley was attempting to assert an Eighth Amendment claim against either

Parker or Hostetter based on Hostetter's comments at the hearing or them staring at him, that

effort fails.  Staring at an inmate, regardless of how intimidating it might be, does not give rise to

an Eighth Amendment violation.  Instead, an Eighth Amendment excessive force claim

requires—at a minimum—a "nontrivial" use of force, *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010),

which is not alleged here.  *See also Henslee v. Lewis*, 153 F. App'x 179, 179 (4th Cir. 2005)

("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim

under § 1983.").  Thus, any Eighth Amendment claim also must be dismissed.

III.

For the foregoing reasons, the court will summarily dismiss Shirley's complaint for

failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1).  All of his claims are dismissed

with prejudice, except for his retaliation claim, which is dismissed without prejudice.  In

consideration of Shirley's status as a *pro se* litigant, the court will give him an opportunity to

amend his complaint as to his retaliation claim only, if he wishes to do so, in order to correct

the deficiencies noted in this opinion.  If he elects to amend, he shall do so within thirty days

9

after entry of the accompanying order.

An appropriate order will be entered.

Entered: May 7, 2020.

/s/ Elizabeth K. Dillon

Elizabeth K. Dillon
United States District Judge